(No. 5078—

FRUIN-COLNON CONTRACTING COMPANY, A Corporation, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 23, 1967.*

JOHN E. HOWARTH, NELSON HOWARTH and RAYMOND L. TERRELL, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General; LEE. D. MARTIN, Assistant Attorney General, for Respondent.

PEZMAN, J.

This cause of action arises out of two contracts between claimant, Fruin-Colnon Contracting Company, a

Corporation, and respondent, State of Illinois, by and through its Department of Public Works and Buildings, providing for the construction of a storm sewer system and a pumping station within St. Clair County, Illinois. Both contracts provided that "time is of the essence of this contract."

Both contracts provided in part as follows:

"When a delay occurs due to unforeseen causes beyond the control and without the fault or negligence of the contractor, including, but not restricted to acts of God, acts of public enemy, governmental acts, fires, floods, epidemics, strikes (except those caused by improper acts or omissions of the contractor), extraordinary delay in delivery of materials caused by strikes, lockouts, wrecks, freight, embargoes, governmental acts, or acts of God, the time of completion shall be extended in whatever amount is determined by the Department to be equitable.

"Promptly after each unforeseen delay is filed, the Department shall give to the contractor written notice of an extension to contract date . . ."

Each contract provided for liquidated damages in the sum of $750.00 for each day the completion of the contract extended past the agreed date of completion plus any extensions of time granted by the Department.

On July 14, 1959, respondent awarded the sewer contract to claimant, which was to be completed by claimant within 90 days. After the receipt of the decision of respondent to award the sewer contract, claimant began to mobilize its equipment and personnel to begin work on the project. On May 22, 1959, respondent awarded the pumping station contract to claimant. The pumping station contract contained a completion date of February 15, 1960.

On August 1, 1959, an area-wide strike began preventing any work from being done on the sewer project or the pumping station project. The strike lasted for 48 days, or until September 17, 1959. The evidence shows

that the period during which the strike ensued was ideal weather for construction. Because of the strike, work on the sewer project and pumping station project was pushed into winter and the accompanying bad weather. It was undisputed by respondent that construction work of this nature is slowed down by winter weather because there are fewer working days during the winter months, and also because the worker's efficiency is greatly impaired because of the weather as compared to summer months.

On October 7, 1959, claimant made a written request to respondent for an extension of the completion date on both contracts of 48 days directly attributable to the strike, and 20 additional days as being indirectly attributable to the strike by reason of being pushed into winter weather. Respondent did not reply to this request until December 19, 1959, some 70 days after the request was made. During this period from October 7, 1959 to December 19, 1959, the District Engineer of the State of Illinois, E. W. Riefler, recommended to his superior that time in addition to the 48 days directly attributable to the strike be granted to claimant by reason of the fact that the strike pushed the work into winter weather, and recommended that an additional 10 day extension be granted for that reason. Mr. Norris, the Chief Highway Engineer, agreed with the recommendation of the District Engineer, and, on October 27, 1959, requested C. S. Monier, Division Engineer of the Bureau of Public Roads of the United States, which was involved by reason of federal financing on these projects, to approve the extension of an additional 10 days. Copies of these letters recommending an extension of 48 days directly attributable to the strike and an additional 10 days indirectly attributable to the strike were sent to and re-

ceived by claimant. On November 13, 1959, the Bureau of Public Roads declined to concur with the request for an additional 10 day extension.

On November 15, 1959, claimant wrote to respondent stating that they had not yet received a reply to their request for a 68 day extension, and that the failure of respondent to reply was making it difficult if not impossible to plan and program the work. On December 10, 1959, claimant was notified that an extension of 48 days would be granted on both projects, but that the request for the additional 20 days was refused on both projects. Respondent admits that, if claimant had been notified promptly that its request for an additional 20 days extension would be denied, claimant could have put additional men and equipment on the job in order to finish in time.

The record in this case indicates that there were other extensions of time requested on both projects for various reasons. Some of these were granted, while some were refused. During the month of April, 1960, it was determined that Union Electric Company, the power company providing power for the operation of the pumping station, could not supply the type of meter provided for in the specifications prepared by respondent. Respondent was requested to revise its specifications so that Union Electric Company could use the metering equipment, which they had on hand, and which they insisted must be used. Although the request was made in apt time, respondent delayed in making the decision to revise the specifications so that claimant was delayed 10 days in testing the pumping station equipment. Claimant requested an additional 10 day extension for time lost due to the failure of Union Electric

Company to provide the specified metering devices, and the failure on the part of respondent to promptly revise its specifications when notified of the metering problem.

During the latter part of September, 1959, while claimant was engaged in tunneling in connection with the storm sewer project, claimant requested respondent to notify and cause the Union Electric Company to remove and relocate certain power lines, which were directly in the path of the storm sewers. Other requests had been made by claimant directly to Union Electric Company to relocate these power lines as early as July, 1959. Claimant had suggested to Union Electric Company that it move the power lines during the period of the strike so that claimant could resume work immediately upon termination of the strike. The power lines were not relocated by the Union Electric Company until September 28, 1959, thereby delaying work by claimant on the storm sewer project for some 10 calendar days.

After giving credit for the extensions granted, respondent set May 1, 1960 as the completion date for the pumping station contract, and December 2, 1959 as the completion date for the storm sewer project. The pumping station project was completed and accepted on May 11, 1960, 10 days late, and the storm sewer project was accepted on December 14, 1959, 12 days late. Respondent is withholding from contract payments the sums of $7,500.00 as liquidated damages on the pumping station project, and $9,000.00 as liquidated damages on the storm sewer project.

The Court will first consider claimant's contention that it was entitled to an extension of 68 days on both contracts due to the 48 day strike, which halted all work on both projects. The contracts in question provided

that, when a delay occurs due to unforeseen causes beyond control of contractor, and without the fault or negligence of the contractor, including strikes, the time of completion shall be extended in whatever amount is determined by the Department to be equitable. The portion of the requested extension of 68 days, which is disputed, is the request of 20 additional days by claimant for delay of both projects by reason of the fact that work on both projects was pushed into the winter months. Respondent's witnesses, including respondent's project engineer, testified that there would be an additional delay due to the fact that the strike pushed the work on both projects into the winter months. It appears to this Court that the question to be determined is not whether claimant was entitled to an extension in excess of the 48 days of the strike, but rather how much of an extension in excess of the 48 days was claimant entitled to under the provisions of the two contracts. It is the opinion of this Court that respondent's agents, E. W. Riefler, District Engineer, and Mr. Norris, Chief Highway Engineer, have answered this question. Mr. Riefler recommended to his superior, Mr. Norris, an additional extension of 10 days in addition to the 48 day extension. Mr. Norris apparently concurred in this recommendation, and in a letter to C. S. Monier, Division Engineer of the Bureau of Public Roads of the United States, requested the assent of the Bureau of Public Roads to a total extension of 58 days due to the strike. When the Bureau of Public Roads declined to assent to an extension in excess of 48 days, claimant was notified by respondent that an extension of only 48 days would be granted. It is the opinion of this Court that an extension of 58 days due to the strike should have been granted claimant on both projects under the provisions of both contracts.

The Bureau of Public Roads was not a party to the contract between claimant and respondent, and a determination by the Bureau that claimant should not be granted any extension in excess of 48 days should not control the decision of respondent, as it clearly did in this case.

Testimony in this case indicated that claimant made a written request to respondent on October 7, 1959 for an extension of 68 days due to the strike. Respondent did not reply to claimant concerning the extension until December 19, 1959, at which time it granted an extension of only 48 days. During this period claimant received copies of correspondence between respondent's agents that an extension of 58 days should be granted. The contracts in question provided that *promptly* after each unforeseen delay is filed the Department shall give to the contractor written notice of an extension to the contract date. It is the opinion of this Court that a reasonable construction to this provision required respondent to give *prompt* notice of denial of an application for extension. Because of the delay in notifying claimant as to the decision on its request for an extension of 68 days, claimant was put in a quandary as to how to proceed with the projects. If respondent's decision to allow only a 48 day extension had been promptly communicated to claimant, it could have hired additional men and equipment, and finished the job on time. It is the opinion of this Court that delay on the part of respondent in replying to the request of claimant for a 68 day extension was unfair, inequitable and unconscionable, and that respondent is estopped by reason of the delay occasioned by it to deny claimant an extension of 58 days as it was led to believe would be granted. The decision of this Court that claimant was entitled to an additional 10 day extension will extend the date

of completion on the pumping house project to May 11, 1960 so that said project was completed on time, and no liquidated damages are due to respondent from claimant. It is, therefore, unnecessary for the Court to rule on claimant's contention that it was entitled to an additional extension of 10 days due to the failure of the Union Electric Company to provide the proper metering devices for the pumping station project, and the delay on the part of respondent in revising its specifications to allow Union Electric Company to use the equipment it insisted upon using.

The Court will now consider claimant's request for an extension of 10 days on the storm sewer project due to a delay occasioned by Union Electric Company's failure and refusal to relocate certain power lines in the path of the storm sewer lines. The evidence in this case indicates that proper requests were made to Union Electric to relocate the power lines during the period of the strike, but that said power lines were not relocated until September 28, 1959. The strike ended September 17, 1959. As a result of this delay, claimant lost 10 calendar days on the storm sewer project. Under the terms of the contract the only duties imposed upon claimant was to cooperate with and coordinate its activities with Union Electric. It appears that claimant made every possible effort to have the power lines relocated so that they would not interfere with progress on the storm sewer project. Claimant had no control over Union Electric Company under the terms of the contract. It is the opinion of this Court that the delay resulting from Union Electric Company's failure to relocate certain power lines, when requested, was a delay due to unforeseen causes beyond the control and without the fault or negligence of the contractor within the provi-

sions of the storm sewer project contract. The evidence in this case indicates that an extension of only one day was granted by respondent for this delay. It appears to the Court that claimant lost a minimum of 6 working days directly attributable to this delay. Therefore, we hold that claimant was entitled to an extension of at least 6 days. The decision of this Court that the completion date of the storm sewer project should be extended an additional 10 days due to the strike and an additional 6 days due to the delay caused by Union Electric's failure to relocate certain power lines has the effect of extending the completion date on the sewer project to December 17, 1959. The storm sewer project was completed and accepted by respondent on December 14, 1959. The Court, therefore, holds that respondent is not entitled to withhold any of the contract payments due claimant for liquidated damages.

This Court feels that claimant is properly entitled to the amounts withheld by respondent as liquidated damages on both the storm sewer and pumping station projects. The record in this case indicates that certain additional sums of money have been withheld under the two contracts as retainage by reason of the fact that claimant has not provided respondent with certain waivers and affidavits as required by respondent. It is the opinion of this Court that all retainage should now be awarded to claimant despite the fact that claimant has not supplied the waivers and affidavits.

The Court has considered the contentions of claimant in relation to its demands for interest arising out of retainage as set forth in Counts II and IV of the complaint, but the Court finds no basis either in statute law or precedent of this Court for the payment of in-

terest upon the retainage. Claimant's demand for interest, as set forth in Counts II and IV of the complaint, are, therefore, denied.

Under Count I, claimant is hereby awarded the sum of $9,000.00 as and for liquidated damages withheld by respondent under the sewer project contract, and the further sum of $12,824.66, said sum being the retainage admittedly withheld by respondent under the same said sewer project contract. Under Count III, claimant is awarded the sum of $7,500.00, the amount withheld by respondent for liquidated damages under the pumping station contract, and the further sum of $6,576.24, said sum being the amount of retainage admittedly withheld by respondent from claimant under the pumping station contract.